**IN THE UNITED STATED DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No.

JEFFREY VEIGEL, Individually and on Behalf Of All Others Similarly Situated,

    Plaintiff,

v.

AMERICAN OIL & GAS, INC., PATRICK D. O'BRIEN, ANDREW P. CALERICH, JON R. WHITNEY, NICK DEMARE, C. SCOTT HOBBS, AND HESS CORPORATION,

    Defendants.

---

**SHAREHOLDER CLASS ACTION COMPLAINT AND JURY DEMAND**

---

Plaintiff, by his undersigned attorneys, for his class action complaint against defendants, alleges upon knowledge as to his own acts and upon information and belief as to all other matters, based upon the investigation made by and through his attorneys, which investigation included, inter alia, the review of United States Securities and Exchange Commission ("SEC") filings, press releases, analyst reports, news articles and other materials, as follows:

**SUMMARY OF ACTION**

    **1.**    Plaintiff brings this action on behalf of the public stockholders of American Oil & Gas, Inc. ("AO&G" or the "Company") against Defendants, AO&G and its Board of Directors (the "Board"), seeking equitable relief for their breaches of fiduciary duty and other violations of state law arising a proposed transaction in which defendant Hess Corporation ("Hess") seek to acquire all the outstanding shares of AO&G common stock in an all-stock transaction pursuant to

which Hess will to issue 0.1373 shares of its common stock in exchange for each outstanding share of AO&G's common stock (the "Proposed Transaction").

  **2.** It is expected that Hess will issue approximately 8.6 million shares for all outstanding AO&G shares and options on a net settlement basis. Neither AO&G nor Hess has yet released a copy of the merger agreement.

  **3.** The Proposed Transaction was publicly announced on July 27, 2010, and will requires a majority vote of AO&G shareholders. To date, the Company has neither issued a proxy statement nor set a date for the shareholder vote although the Company has announced that it expects the Proposed Transaction to close in the fourth quarter of 2010.

  **4.** As set forth herein, the Proposed Transaction is neither fair to AO&G's shareholders nor likely to produce a transaction that will maximize shareholder value. Hess is attempting to acquire AO&G at a time when its prospects have never been brighter. In addition, AO&G's board of directors (the "Board") and Hess have entered into a merger agreement (the "Merger Agreement") that essentially locks out any potential for AO&G to obtain a superior offer. Indeed, if AO&G terminates the Merger Agreement, it must surrender a "termination fee" of $13.5 million to Hess – plus reimburse Hess for up to $2.25 million of *Hess'* expenses.

## JURISDICTION AND VENUE

  **5.** This Court has diversity jurisdiction because there is complete diversity between the parties and the amount in controversy exceeds $75,000. For this reason, this Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332.

6.      AO&G has a substantial presence in Colorado, operating several businesses and facilities in this state. AO&G's headquarters are located in Denver, Colorado. Each defendant has had substantial and continuous contacts with the State of Colorado that make the exercise of personal jurisdiction over them proper. Certain defendants live in and are citizens of the State of Colorado.

7.      Each defendant has minimum contacts with the United States, as they either reside here or have frequently traveled here on AO&G business and otherwise or have authorized acts and actions which have had a sufficient impact in the United States or on AO&G's shareholders and investors residing here to justify the exercise of jurisdiction over them.

## PARTIES

8.      Plaintiff Jeffrey Veigel is, and has been at all relevant times, an owner of shares of common stock of AO&G. Plaintiff is a citizen of the State of Maryland.

9.      Defendant AO&G is a corporation organized and existing under the laws of the State of Nevada with its principal executive offices located 1050 17th Street, Suite 2400, Denver, Colorado 80265. AO&G is an independent oil and natural gas company engaged in exploration, development and production of hydrocarbon reserves primarily in the Rocky Mountain region. AO&G's operations are focused primarily in a project known as the "Goliath Project." The Goliath Project is located primarily in Williams and Dunn Counties, North Dakota in an area where AO&G is targeting both the middle member of the Bakken formation and the Three Forks formation in the North Dakota portion of the Williston Basin. Through three separate transactions in 2009, AO&G now controls approximately 76,000 net (111,000 gross) acres in the

Goliath Project. AO&G's shares trade on the American Stock Exchange under the trading symbol "AEZ."

**10.** Defendant Patrick D. O'Brien ("O'Brien") has served as Chief Executive Officer and as a director of the Company since February 19, 2003. Defendant O'Brien also served as the Company's President from February 19, 2003 until July 16, 2003. Upon information and belief, defendant O'Brien is a citizen of the State of Colorado.

**11.** Defendant Andrew P. Calerich ("Calerich ") has served as AO&G's President since July 17, 2003, and as a director since October 30, 2003. Defendant Calerich also served as the Company's Chief Financial Officer from July 17, 2003 to June 30, 2006. Upon information and belief, defendant Calerich is a citizen of the State of Colorado.

**12.** Defendant Jon R. Whitney ("Whitney") has served as a director of the Company since February 2005. Upon information and belief, defendant Whitney is a citizen of the State of Colorado.

**13.** Defendant Nick DeMare ("DeMare") has served as a director of the Company, designated audit committee financial expert, and as Chairman of the Audit Committee since October 30, 2003. Upon information and belief, defendant DeMare is a citizen of British Columbia, Candada.

**14.** Defendant C. Scott Hobbs ("Hobbs") has served as a director of the Company since July 2008. Upon information and belief, defendant Hobbs is a citizen of the State of Colorado.

15. Defendants referenced in ¶¶ 10 through 14 are collectively referred to as Individual Defendants and/or the AO&G Board. The Individual Defendants as officers and/or directors of AO&G, have a fiduciary relationship with plaintiff and other public shareholders of AO&G and owe them the highest obligations of good faith, fair dealing, loyalty and due care.

16. Defendant Hess is a Delaware corporation with headquarters at 1185 Avenue of the Americas, New York, New York 10036. Hess is a global integrated energy company engaged in the exploration, production, purchase, transportation, and sale of crude oil and natural gas, as well as the production and sale of refined petroleum products.

## INDIVIDUAL DEFENDANTS' FIDUCIARY DUTIES

17. By reason of Individual Defendants' positions with the Company as officers and/or directors, they are in a fiduciary relationship with Plaintiff and the other public shareholders of AO&G and owe them, as well as the Company, a duty of highest good faith, fair dealing, loyalty and full, candid, and adequate disclosure, as well as a duty to maximize shareholder value.

18. Where the officers and/or Directors of a publicly traded corporation undertake a transaction that will result in either: (i) a change in corporate control; (ii) a break-up of the corporation's assets; or (iii) sale of the corporation, the Directors have an affirmative fiduciary obligation to obtain the highest value reasonably available for the corporation's shareholders, and if such transaction will result in a change of corporate control, the shareholders are entitled to receive a significant premium. To diligently comply with their fiduciary duties, the Directors and/or officers may not take any action that:

  (a) adversely affects the value provided to the corporation's shareholders;

  (b) favors themselves or will discourage or inhibit alternative offers to purchase control of the corporation or its assets;

  (c) contractually prohibits them from complying with their fiduciary duties;

  (d) will otherwise adversely affect their duty to search and secure the best value reasonably available under the circumstances for the corporation's shareholders; and/or

  (e) will provide the Directors and/or officers with preferential treatment at the expense of, or separate from, the public shareholders.

19. In accordance with their duties of loyalty and good faith, the Individual Defendants, as Directors and/or officers of AO&G, are obligated to refrain from:

  (a) participating in any transaction where the directors or officers' loyalties are divided;

  (b) participating in any transaction where the directors or officers receive, or are entitled to receive, a personal financial benefit not equally shared by the public shareholders of the corporation; and/or

  (c) unjustly enriching themselves at the expense or to the detriment of the public shareholders.

20. Plaintiff alleges herein that the Individual Defendants, separately and together, in connection with the Proposed Transaction are knowingly or recklessly violating their fiduciary

duties, including their duties of loyalty, good faith and independence owed to Plaintiff and other public shareholders of AO&G, or are aiding and abetting others in violating those duties.

21. Defendants also owe the Company's stockholders a duty of candor, which includes the disclosure of all material facts concerning the Proposed Transaction and, particularly, the fairness of the price offered for the stockholders' equity interest. Defendants are knowingly or recklessly breaching their fiduciary duties of candor by failing to disclose all material information concerning the Proposed Transaction, and/or aiding and abetting other Defendants' breaches.

## CONSPIRACY, AIDING AND ABETTING AND CONCERTED ACTION

22. In committing the wrongful acts alleged herein, each of the Defendants has pursued, or joined in the pursuit of, a common course of conduct, and acted in concert with and conspired with one another, in furtherance of their common plan or design. In addition to the wrongful conduct herein alleged as giving rise to primary liability, the Defendants further aided and abetted and/or assisted each other in breach of their respective duties as herein alleged.

23. During all relevant times hereto, the Defendants, and each of them, initiated a course of conduct which was designed to and did: (i) permit Hess to attempt to eliminate the public shareholders' equity interest in AO&G pursuant to a defective sales process; and (ii) permit Hess to buy the Company for an unfair price. In furtherance of this plan, conspiracy and course of conduct, Defendants, and each of them, took the actions as set forth herein.

24. Each of the Defendants herein aided and abetted and rendered substantial assistance in the wrongs complained of herein. In taking such actions, as particularized herein,

to substantially assist the commission of the wrongdoing complained of, each Defendant acted with knowledge of the primary wrongdoing, substantially assisted the accomplishment of that wrongdoing, and was aware of his or her overall contribution to, and furtherance of, the wrongdoing. The Defendants' acts of aiding and abetting included, *inter alia*, the acts each of them are alleged to have committed in furtherance of the conspiracy, common enterprise and common course of conduct complained of herein.

## CLASS ACTION ALLEGATIONS

**25.**     Plaintiff brings this action on his own behalf and as a class action on behalf of all owners of AO&G Common Stock and their successors in interest, except Defendants and their affiliates (the "Class").

**26.**     This action is properly maintainable as a class action for the following reasons:

(a)     the Class is so numerous that joinder of all members is impracticable. As of June 7, 2010, AO&G had approximately 60.815 million shares outstanding.

(b)     questions of law and fact are common to the Class, including, *inter alia*, the following:

   (i)     Whether the Individual Defendants breached their fiduciary duties owed by them to plaintiff and the others members of the Class;

   (ii)     Whether the Individual Defendants, in connection with the Proposed Transaction of AO&G by Hess, pursuing a course of conduct that does not maximize AO&G's value in violation of their fiduciary duties;

   (iii)     Whether the Individual Defendants misrepresented and omitted material facts in violation of their fiduciary duties owed by them to plaintiff and the other members of the Class;

      (iv)    Whether AO&G and Hess aided and abetted the Individual Defendants' breaches of fiduciary duty; and

      (v)    Whether the Class is entitled to injunctive relief or damages as a result of Defendants' wrongful conduct.

(c)    Plaintiff is committed to prosecuting this action and has retained competent counsel experienced in litigation of this nature.

(d)    Plaintiff's claims are typical of those of the other members of the Class.

(e)    Plaintiff has no interests that are adverse to the Class.

(f)    The prosecution of separate actions by individual members of the Class would create the risk of inconsistent or varying adjudications for individual members of the Class and of establishing incompatible standards of conduct for Defendants.

(g) Conflicting adjudications for individual members of the Class might as a practical matter be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests.

## SUBSTANTIVE ALLEGATIONS

**A.**    **AO&G's Impressive Stock Performance**

**27.**    AO&G's primary operations take place on land, in the center of North America. Its Bakken properties are located in North Dakota, Montana, and Canada, far from any off-shore drilling sites such as the Gulf of Mexico.

**28.**    Particularly in light of recent events relating to the sizable environmental, economic, and political risks of off-shore drilling, AO&G's Bakken holdings hold tremendous promise for AO&G. As recently as July 1, 2010, AO&G, in a press release entitled, "American

9

Oil & Gas Inc. Updates North Dakota Bakken and Three Forks Activity – Ron Viall and Summerfield Wells Demonstrate Strong 30 day Production Performance," the Company announced promising results from the initial production of its Bakken holdings, namely, that:

> its operated Ron Viall 1-25H well (American 95% working interest), located in T156N-R98W Sections 24 and 25 in Williams County, ND that *initially produced 2,844 barrels of oil equivalent (1,981 barrels of oil and 5,179 Mcf of natural gas) from the Bakken formation during an early 24 hour flow back period, averaged 987 barrels of oil equivalent per day ("BOE/D") during its first 30 production days.* American also announces that its Summerfield 15-15H well (American approximate 33% working interest), located in T147N-R96W, Section 15, Dunn County, ND that *initially produced 2,799 barrels of oil equivalent (2,178 barrels of oil and 3,729 Mcf of natural gas) from the Bakken formation during an early 24 hour flow back period, has averaged 1,046 BOE/D during its first 30 production days.* The Tong Trust 1-20H well (American 27% working interest), located in T157N-R96W, Sections 20 and 17, is currently undergoing a workover to clean out the wellbore and install a rod pump. (Emphasis added).

**29.**     AO&G interpreted these results positively:

> Pat O'Brien, CEO of American, commented, "We are pleased to report that *our two most recently completed Bakken wells continue to demonstrate strong production performance.* Production from these wells, combined with production from our Tong Trust well and minority interests in several non-operated Bakken wells, should begin to favorably impact the Company's operating results commencing in the quarter just ended. We currently have two high working interest Bakken wells scheduled for completion and drilling operations are underway in two additional high working interest wells as part of our 2010 two rig continuous drilling program." (Emphasis added).

**30.**     The investing public has been aware of the intrinsic value of AO&G. In the past 12 months, the closing price of AO&G stock has risen from a 52-week low of $1.16 per share to a close of $7.14 per share on July 29, 2010. In particular, AO&G's primary focus *away* from off-shore operations appears to insulate it from the recent political and environmental impact of British Petroleum's disastrous oil-spill in the Gulf of Mexico. Indeed, in early May 2010, the

trading price of AO&G's shares dropped slightly and then, only temporarily, in response to the Gulf of Mexico emergency; the price has continued to climb ever since.

**B.   The Proposed Transaction**

**31.**   Despite its promise and poise for growth, the Company executed the Merger Agreement on July 27, 2010.  In a press release, entitled "Hess Corporation to Acquire American Oil & Gas Inc.," issued later that day, the Company states in pertinent part:

> NEW YORK and DENVER, July 27, 2010 – Hess Corporation (NYSE: HES) and American Oil & Gas Inc. (NYSE-AMEX: AEZ) jointly announced today that Hess has agreed to acquire American Oil & Gas pursuant to a merger agreement approved by the Boards of Directors of both companies in an all-stock transaction. The acquisition will increase Hess' strategic acreage position in the Bakken oil play in North Dakota by approximately 85,000 net acres.
>
> Under terms of the agreement, Hess has agreed to issue 0.1373 shares of its common stock in exchange for each outstanding share of American Oil & Gas' common stock.  This represents a 9.4 percent premium to American Oil & Gas stockholders based on the closing stock prices of Hess' and American Oil & Gas' shares on July 27, 2010.  It is expected that Hess would issue approximately 8.6 million shares for all outstanding American Oil & Gas shares and options on a net settlement basis.  The merger agreement provides for a possible cash dividend to American Oil & Gas' stockholders to the extent of American Oil & Gas' positive working capital as of the closing date (subject to certain adjustments that are described in the merger agreement) and subject to available cash.  Hess has committed (subject to the terms and conditions of a customary commitment letter) to provide American Oil & Gas with a $30 million working capital credit facility to help finance American Oil & Gas' planned exploration and production activities and other working capital needs prior to the closing of the transaction.
>
> "This acquisition builds upon our strong land position in the Bakken, leverages our nearby infrastructure and offers operational synergies," said Greg Hill, President of Worldwide Exploration and Production at Hess.
>
> "We believe this transaction captures the value that we have been able to create since our initial entry in the North Dakota Bakken play four years ago," said Pat O'Brien, CEO of American Oil & Gas.  "We are excited about the leverage our

11

stockholders will gain not only to Hess' compelling Bakken position and developmental activities, but also to Hess' large and diverse global project portfolio."

32.     The premium of the Proposed Transaction, however, is a paltry 9.4 percent. Indeed, just recently a *Bloomberg* article dated December 21, 2009 and entitled "CEOs paying 56% M&A Premium Shows Stocks May be Cheap" reported that "[t]he average premium in mergers and acquisitions in [2009] which U.S. companies were the buyer and seller rose to 56% this year from 47 percent last year [2008] . . . ." Thus, the Proposed Transaction premium of 9.4% is *well below* the average premium in like transactions during 2009.

33.     Given the recent performance of the Company's stock as well as its future prospects, the consideration shareholders are to receive is inadequate. Accordingly, Hess is picking up AO&G at the most opportune time, at a time when AO&G is poised for growth.

C.     **The Onerous Termination Provisions**

34.     The Merger Agreement also contains provisions that make it virtually impossible for AO&G shareholders to obtain a higher price for their investment. As disclosed by the Company on July 29, 2010, the Merger Agreement contains the following provisions:

> The Company, Hess and Merger Sub have made representations, warranties and covenants in the Agreement, including covenants by the Company to conduct its business in the ordinary course and not to engage in certain kinds of transactions and activities during the period between the execution of the Agreement and the consummation of the Merger. The Company also has made certain additional covenants, including, among others, covenants, subject to certain exceptions, (1) not to solicit proposals regarding alternative business combination transactions, (2) not to enter into discussions concerning, or provide confidential information in connection with, alternative business combination transactions, (3) not to approve or recommend any alternative business combination transaction proposals, (4) to cause a stockholder meeting to be held to consider approval of

> the Merger and (5) for its Board of Directors to recommend approval of the Agreement by the Company's stockholders.
>
> Each of the parties to the Agreement may terminate the Agreement upon the occurrence of several events.  Among other things, the Agreement may be terminated if (1) the Company's Board of Directors changes its recommendation to its common stockholders to approve the Merger, or authorizes or endorses an Alternative Transaction (as defined in the Agreement), (2) the Agreement is not adopted by the Company's stockholders, (3) the Merger is not completed by January 31, 2011 or (4) the Company directly or indirectly takes action to solicit an Alternative Transaction.  Upon termination of the Agreement under specified circumstances, the Company will be required to pay Hess a termination fee of $13.5 million and reimburse expenses of Hess not to exceed $2.25 million.  With certain exceptions, all costs and expenses incurred in connection with the Agreement will be paid by the party incurring such expenses, whether or not the Merger is consummated.

35.     The Merger Agreement does not include an effective "fiduciary out," and practically forecloses the Board's ability to investigate and pursue alternatives to the proposed acquisition, including a sale of all or part of AO&G to higher bidders.  The Board cannot engage in discussions with other potentially interested bidders except under limited circumstances. Additionally, AO&G will be subject to termination fees in the event it would make an adverse recommendation regarding the Tender Offer and termination of the Merger Agreement which requires, among other things, payment of a termination fee of $13.5 million and reimburse Hess' transaction expenses up to $2.25 million.  The Board cannot, however, take such action to consider alternatives after Hess has purchased any Company shares in the Tender Offer.

36.     As part of the Merger Agreement, Defendants agreed to certain onerous and preclusive deal protection devices that operate conjunctively to make the Proposed Transaction a *fait d'accompli* and ensure that no competing offers will emerge for the Company.

37. The Individual Defendants agreed to onerous deal protection devices in breach of their fiduciary duties to AO&G shareholders, which prevent a superior offer from being made for the Company. Pursuant to the terms of the Merger Agreement there are many protection devices preventing a superior offer from being made to AO&G shareholders. Specifically, the Merger Agreement provides that AO&G, under specified circumstances, is: (1) restricted from soliciting and furnishing information to third parties; (2) must provide Hess 3 days to match any superior proposal; and (3) must pay Hess a termination fee of up to $13.5 million, in addition to an expense reimbursement of up to $2.25 million if the Company determines to terminate the Merger Agreement to accept a superior offer.

38. The terms of the Merger Agreement are structured to ensure that Hess, and only Hess, ultimately acquires AO&G, regardless of whether such terms are designed and/or serve to maximize shareholder value. The Termination Fee and expense obligation are deterrents to other potential bidders and provides defendants with an unearned windfall at the expense of the Company's public shareholders if a superior bid emerges. Accordingly, the terms of the Merger Agreement substantially limit the Board's ability to act with respect to investigating and pursuing superior proposals and alternatives including a sale of all or part of AO&G.

39. Ultimately, the preclusive deal protection devices illegally restrain the Company's ability to solicit or engage in negotiations with any third party regarding a proposal to acquire all or a significant interest in the Company. The circumstances under which the Board may respond to an unsolicited written bona fide proposal for an alternative acquisition that constitutes or

would reasonably be expected to constitute a superior proposal are too narrowly circumscribed to provide an effective "fiduciary out" under the circumstances.

40. Accordingly, Plaintiff seeks injunctive and other equitable relief to prevent the irreparable injury that Company shareholders will continue to suffer absent judicial intervention.

## CLAIMS FOR RELIEF

### COUNT I
### Breach of Fiduciary Duty – Failure to Maximize Shareholder Value
### (Against All Individual Defendants)

41. Plaintiff repeats all previous allegations as if set forth in full herein.

42. As Directors of AO&G, the Individual Defendants stand in a fiduciary relationship to plaintiff and the other public stockholders of the Company and owe them the highest fiduciary obligations of loyalty and care. The Individual Defendants' recommendation of the Proposed Transaction will result in change of control of the Company, which imposes heightened fiduciary responsibilities to maximize AO&G's value for the benefit of the stockholders and requires enhanced scrutiny by the Court.

43. As discussed herein, the Individual Defendants have breached their fiduciary duties to AO&G shareholders by failing to engage in an honest and fair sale process.

44. As a result of the Individual Defendants' breaches of their fiduciary duties, plaintiff and the Class will suffer irreparable injury in that they have not and will not receive their fair portion of the value of AO&G's assets and will be prevented from benefiting from a value-maximizing transaction.

**45.** Unless enjoined by this Court, the Individual Defendants will continue to breach their fiduciary duties owed to plaintiff and the Class, and may consummate the Proposed Transaction, to the irreparable harm of the Class.

**46.** Plaintiff and the Class have no adequate remedy at law.

## COUNT II
### Aiding and Abetting
### (Against AO&G and Hess)

**47.** Plaintiff repeats all previous allegations as if set forth in full herein.

**48.** As alleged in more detail above, AO&G and Hess are well aware that the Individual Defendants have not sought to obtain the best available transaction for the Company's public shareholders. Defendants AO&G and Hess aided and abetted the Individual Defendants' breaches of fiduciary duties.

**49.** As a result, Plaintiff and the Class members are being harmed.

**50.** Plaintiff and the Class have no adequate remedy at law.

**WHEREFORE**, Plaintiff demands judgment against Defendants jointly and severally, as follows:

(A) declaring this action to be a class action and certifying plaintiff as the Class representative and his counsel as Class counsel;

(B) enjoining, preliminarily and permanently, the Proposed Transaction;

(C) in the event that the transaction is consummated prior to the entry of this Court's final judgment, rescinding it or awarding plaintiff and the Class rescissory damages;

(D) directing that Defendants account to Plaintiff and the other members of the Class for all damages caused by them and account for all profits and any special benefits obtained as a result of their breaches of their fiduciary duties;

(E) awarding plaintiff the costs of this action, including a reasonable allowance for the fees and expenses of plaintiff's attorneys and experts; and

(F) granting plaintiff and the other members of the Class such further relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff hereby demands a trial by jury on all issues triable by a jury.

Dated: August 3, 2010

*/s/ Gerald L. Bader, Jr.*
_____

Gerald L. Bader Jr., #3625
BADER & ASSOCIATES, LLC
1873 S. Bellaire St., #1110
Denver, CO 80222
Telephone: (303) 534-1700
Facsimile: (303) 691-5076
E-mail:   gbader@bader-associates.com
Attorney for Plaintiff

**Of Counsel:**

**HARWOOD FEFFER LLP**
Robert Harwood
James G. Flynn
488 Madison Avenue, 8th Floor
New York, NY 10022
(212) 935-7400
(212) 753-3630 (fax)

**RYAN & MANISKAS, LLP**
Katharine Ryan
Richard A. Maniskas
995 Old Eagle School Rd., Suite 311
Wayne, PA 19087
Tel.: (484) 588-5516